[Civ. No. 16676. Second Dist., Div. One. Dec. 29, 1948.]

RACHEL MAY GRACE, Appellant, v. WALTER KENNETH GRACE, Respondent.

Walley & Davis and Leland E. Zeman for Appellant.

No appearance for Respondent.

WHITE, J.—Plaintiff has appealed from a judgment of dismissal entered after a demurrer to her amended complaint was sustained without leave to amend.

The action was commenced August 13, 1947. Plaintiff alleged that she and defendant were married in 1940; that in April, 1943, plaintiff brought an action for separate maintenance, in which action an answer was filed by the defendant, a trial of the issues was had on April 24, 1944, and the matter taken under submission by the trial judge. Plaintiff then alleged, in substance, that her husband was constantly im-

portuning her to seek an absolute divorce and threatening that if she did not she would receive no support from him; that her attorney also persistently suggested to plaintiff that the court would deny her support unless she would consent to amend her complaint to one for divorce; that "as a result of the emotional strain undergone by plaintiff in the contest and trial of her aforesaid action, plaintiff became extremely nervous and unstable, and suffered great exhaustion and fatigue."

The complaint then continues:

"That thereafter, and on May 11, 1944, plaintiff's said attorney of record summoned her to his office and upon plaintiff's arrival plaintiff found present there, in addition to her own counsel, the defendant and the defendant's aforesaid attorney of record; that plaintiff thus unexpectedly found herself closeted in one small office with the said three men, all of whom repeatedly argumentatively and persistently threatened, demanded and insisted that plaintiff should amend her aforesaid cause of action from one seeking separate maintenance to one for divorce, and all of whom threatened and represented that unless plaintiff did so amend the court would not award plaintiff support; that plaintiff protested that such an amendment was contrary to her desires, and that she had always heretofore refused, and would continue to refuse to consent to any such amendment; that notwithstanding plaintiff's refusals defendant and the aforesaid attorneys continued to urge and insist that plaintiff so amend her said complaint at peril of being denied support from defendant; that in the midst of said arguments and threats plaintiff became ill and nervous and extremely exhausted and fatigued, worn down, depressed and without further will or strength to resist, and that after a period of time, which plaintiff is not able to measure, and at the insistence of defendant and each and all of the others, and by reason of their repeated representations that the court then having the matter under submission, would not award her support unless the complaint was amended, as aforesaid, plaintiff in a desire to bring the meeting to an end and to escape from the confinement with the defendant and said others in said small room yielded and was prevailed upon to sign and did sign a written stipulation then and there prepared, and in which plaintiff agreed that her aforesaid complaint might be amended, to ask for a divorce from defendant."

It was further alleged that plaintiff would not have consented to the divorce except for the threats and conduct of defendant and his attorneys and the representations of her attorney; that she had not wanted a divorce because she believed a reconcilation could be effected and had so advised her attorney.

On May 17, 1944, an interlocutory decree was entered and a final decree was entered May 25, 1945, at request of defendant's attorney, assertedly without knowledge on the part of the plaintiff.

It was further alleged that the representations of defendant and of plaintiff's attorney were false, made with the intention of deceiving plaintiff; that on information and belief the trial judge in the divorce action never stated that he would not grant support unless she consented to amend her complaint; that had plaintiff known that the court would not have denied her request for support solely because she did not seek a divorce she would not have signed the stipulation.

"That notwithstanding said nervous breakdown plaintiff did, however, between May 28, 1944 and January 12, 1945, consult with and seek advice from the Public Defender of the County of Los Angeles, and the Justice of the Peace of the Township of Burbank, State of California, relative to proceedings to be taken to set aside said interlocutory decree of divorce.

"That on or about January 12, 1945, plaintiff having no funds for her support, not having received the support ordered by the Court with sufficient regularity, moved to the State of Pennsylvania to reside with her father; that while in said State of Pennsylvania plaintiff sought advice from attorneys and law enforcement officials in the State of Pennsylvania, and in the State of New Jersey as to steps plaintiff should take to set aside said interlocutory decree of divorce.

"That plaintiff returned to the State of California on or about March 1, 1946, and upon such return consulted with and sought advice from the Presiding Judge of the Superior Court of the State of California, in and for the County of Los Angeles, with officials of the State Bar of California in both Los Angeles and San Francisco, with attorneys of the Legal Aid Society in Los Angeles, California, as well as with several private attorneys in the City of Los Angeles, California, relative to setting aside the aforesaid interlocutory and final decrees of divorce.

"That none of the aforementioned organizations or persons took any affirmative action to accomplish plaintiff's desire and purpose to set aside said decrees, and each and all of them discouraged plaintiff therefrom, and advised her that she had no legal grounds to set aside the decrees; that to the date of the filing of this complaint each and every attorney and person consulted by plaintiff, with the exception of plaintiff's attorneys of record in this case, had advised plaintiff that it was useless for her to file any suit or take any action to set aside said decrees."

■ Respondent has filed no brief. Appellant in her brief urges that the amended complaint states a cause of action under the authority of *Wuest* v. *Wuest*, 53 Cal.App.2d 339 [127 P.2d 934], but omits entirely to discuss the questions of the statute of limitations or laches, which appear from the face of the pleading in question, and which were urged by respondent in his demurrer to her amended complaint. As heretofore noted, this action was not commenced until more than three years after the entry of the interlocutory decree which it is sought to have set aside. In an action such as this, where the asserted fraud has taken place more than three years before the institution of the suit, the plaintiff is held to stringent rules of pleading, as well as evidence, in showing facts to excuse the delay in seeking relief. (*Consolidated R. & P. Co.* v. *Scarborough*, 216 Cal. 698, 702 [16 P.2d 268]; *Haley* v. *Santa Fe Land Imp. Co.*, 5 Cal.App.2d 415 [42 P.2d 1078]; *Nighbert* v. *First Nat. Bank of Bakersfield*, 26 Cal. App.2d 624, 633 [79 P.2d 1105]; *Kelly* v. *Longan*, 5 Cal.2d 274, 276 [53 P.2d 971].)

To the same effect are the cases cited and quoted from in *Brown* v. *Butler*, 3 Cal.App.2d 11, 19 [39 P.2d 244]. The court there quoted from *Consolidated R. & P. Co.* v. *Scarborough, supra,* as follows: " 'The following appears in *Wood* v. *Carpenter*, 101 U.S. 135, 140 [25 L.Ed 807]; "In this class of cases the plaintiff is held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.' . . . A general allegation of ignorance at one time and of knowledge at another (is) of no effect. If the plaintiff made any particular discovery, it should be stated when it was made, what it was, how it was made, and why it was not made sooner. . . . *The cir-*

*cumstances of the discovery must be fully stated and proved,* and the delay which has occurred must be shown to be consistent with the requisite diligence." . . .

" 'The case last above cited (*Galusha* v. *Fraser,* 178 Cal. 653, 657 [174 P. 311]) clearly and concisely states the law. It is there declared: ''Where the plaintiff sues for relief on the ground of fraud, and seeks exemption from the three years' period of limitation for the reason that he did not discover the fraud until after it was perpetrated, he must not only show (1) that he did not discover the fraud until within the three years next before the action was begun and (2) that the fraud was committed under such circumstances that he would not be presumed to have had knowledge of it at the time, but (3) *he must also set forth the times and circumstances under which the facts constituting the fraud came to his knowledge so that the court may determine from the allegations of the complaint whether the discovery was within that period.*'' ' ''

Whether the plaintiff's pleading meets the requirements of the rules above set forth is a question necessarily dependent upon the peculiar circumstances of each case. (*Miller* v. *Ash,* 156 Cal. 544, 557 [105 P. 600].) A consideration of the amended complaint in the instant cause impels the conclusion that it fails to meet the requirements of such rules. It is to be noted that despite her ''nervous breakdown'' plaintiff, immediately after being informed that an interlocutory decree had been entered, sought advice from the Public Defender of Los Angeles County and the Justice of the Peace of Burbank Township ''relative to proceedings to be taken to set aside said interlocutory decree.'' Her pleading further shows that at various times throughout the period after the entry of the interlocutory decree and prior to the commencement of her present action she consulted with various public officials and private attorneys. It must be assumed that in seeking advice she fully and fairly related the facts of her situation, and in the absence of an allegation to the contrary it must also be assumed that while seeking legal advice as aforesaid she was in possession of the information and belief set forth in her amended complaint that the trial judge did not state to any person that he would not grant her support unless she would ''agree to accept a decree of divorce instead of a decree of separate maintenance.'' No element of concealment on the part of respondent is here involved.

Therefore, the only excuse revealed by the amended complaint for the protracted delay of over three years in filing the action is that the various attorneys and public officials with whom she consulted ''discouraged'' appellant by advising her that ''it was useless'' to take any action. Being in possession of the facts which gave rise to her claimed cause of action almost immediately after the execution of the foregoing stipulation in the separate maintenance proceeding, without commencing legal action for more than three years thereafter, it must be held that appellant has failed to allege facts sufficient to entitle her to exemption from the three-year period of limitations.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.